## UNITED STATES v. DER MANELIAN.
### No. 595.

District Court, D. Rhode Island.

May 13, 1941.

George F. Troy, U. S. Atty., and Edward M. McEntee, Asst. U. S. Atty., both of Providence, R. I., for plaintiff.

Thomas J. Flynn, and Jasper A. Rustigian, both of Providence, R. I., for defendant.

HARTIGAN, District Judge.

This matter came on to be heard on the petition of the United States Attorney for the District of Rhode Island, filed June 4, 1938, for the cancellation of the naturalization of Hohanes Der Manelian.

The petition sets forth that on the 1st day of March, 1927, the respondent was admitted to citizenship in the United States of America at Providence by order of the District Court of the United States for the District of Rhode Island, and was then and there granted a certificate of naturalization.

The petitioner represents that said certificate of citizenship was fraudulently and illegally procured by the said respondent in that:

(a) His testimony given during examination upon said petition and his allegations contained in said petition were wilfully and knowingly false; in that he named two persons, to wit, Arshaloos Der Manelian and Hagop Der Manelian, both of whom were living outside of the United States, as his daughter and son respectively, which allegation was so made for the purpose of preparing for their entry as his said children into the United States; whereas, in truth and in fact the said persons so named were not children of the said respondent.

(b) Further, he did not behave as a person of good moral character during the period prescribed by statute; and

(c) By reason of said false allegations and testimony with respect to the aforesaid persons, which he claimed to be his son and daughter, the Court of the United States and the Government were deceived as to his parental status and moral character and deprived of knowledge of facts material to his naturalization; and being so deceived the Court was induced to and did grant said naturalization.

The petition was brought under Section 15 of the Naturalization Act of June 29, 1906, 8 U.S.C.A. § 405, to set aside and cancel the naturalization of said Hohanes Der Manelian as having been fraudulently and illegally procured.

The respondent denied the allegations contained in paragraphs (a), (b) and (c), supra, and for a further answer said that he had a daughter named Arshaloos Der Manelian and a son Hagop Der Manelian, who were living in Armenia, Turkey, at the time he immigrated to the United States; that during the war there was a deportation of Armenians by order of the Turkish Government and said respondent believed that his daughter and son were among the deportees; that at the time he obtained his naturalization papers he did not know whether his son and daughter were living or dead; and that up to this time he has not heard from them and cannot say whether or not they are still living.

The question involved here is one of fact as to whether the respondent's tes-

timony given during examination upon said petition and his allegations contained in said petition were wilfully and knowingly false as to said Arshaloos Der Manelian and Hagop Der Manelian.

The Government produced as witnesses a deputy clerk of the United States District Court to prove records, two officials connected with the immigration service, and an interpreter, and offered as an exhibit an affidavit made by the respondent and subscribed and sworn to by him on January 20, 1936, before a naturalization examiner. In this affidavit the respondent stated, substantially, that he had two children whose names were Varthouhi Der Manelian and Krekor Der Manelian who were deported by the Turks during the massacre in 1915, and that neither he nor his wife ever heard of these children again and that they did not know whether or not they were living or dead, and that the children whose names appear upon his certificate of citizenship number 2479026, namely, Arshaloos and Hagop, are not the names of his children but are the names of children of the respondent's uncle; and that the respondent was prevailed upon by his friends and some of his relatives when he filed his citizenship papers to have the names of his uncle's children given on his certificate so that some day if he were successful in locating them he could bring them to the United States; and that he would not bring them into the United States for any personal gain or to try to defraud the United States Government, but merely as an act of charity to relieve them of their suffering and to give them a home and comfort.

This affidavit was admitted in evidence as the Government's exhibit 1. The naturalization examiner, before whom it was taken in the Federal Building in Providence, in cross-examination stated that the substance of the language in the affidavit is what the respondent told him but that most of the language used was the examiner's.

The examiner testified that he asked the respondent questions in English and that he got the facts stated in the affidavit without the aid of an interpreter.

The Court is convinced, after observing the respondent and hearing him testify, that he did not use all the language contained in the affidavit.

The Government produced another immigration official who testified that he interrogated the respondent on November 21, 1933, through an Armenian interpreter, and that the respondent told him that the two children named in his petition were not the respondent's but were those of a deceased uncle and that he made that statement in regard to the children because he was asked to do so.

This official also testified that on January 17, 1934, he talked again with the respondent to check with the naturalization petition and that an interpreter was present and that the respondent reiterated his previous statement in regard to the children.

In cross-examination he testified that in the second interview the respondent said he adopted Arshaloos and Hagop and that he considered them his own.

No signed statements were obtained from the respondent at the interviews held November 21, 1933, and January 17, 1934. The interpreter used by the Government on these two interviews in November, 1933, and January, 1934, testified that the immigration official asked questions in English and that he interpreted them in Armenian to the respondent who answered in the Armenian language.

The interpreter corrobrated the testimony of the immigration official on these two interviews.

The respondent testified that he was married in Armenia in 1908 and that two children were born of the marriage, Arshaloos, a girl, and Hagop, a boy; that when he left the old country one child, Arshaloos, had been born; that after he arrived in this country in March, 1911, he received a letter from his wife telling him that Hagop was born. He denied telling the naturalization examiner who took his affidavit on January 20, 1936, that the names of his children were Varthouhi and Krekor. He said that he could not understand very well the questions that were asked him and that the naturalization examiner wrote something down and that he asked him to sign on the bottom and that he did. He testified that he cannot read English and he had no intention to defraud the United States.

In cross-examination he admitted having the interviews on November 21, 1933, and January 17, 1934. He testified that the immigration official scared him on those occasions and denied that he was asked by the immigration official to hold up his hand to take an oath. He admitted that the in-

terpreter asked him questions in Armenian and that he answered them in Armenian. He admitted that his uncle had two children whose names he did not know. He testified that Arshaloos was born in 1910 and he does not know where she is, and that Hagop was born in 1911 and that he is dead. He testified that he never saw his son, Hagop.

Giragos Der Manelian testified that he was born in Armenia on January 29, 1909; that he knew the respondent's wife in the old country and that she lived about one minute's walk from where he did. He testified that he is the third or fourth cousin of the respondent. He said he remembered playing with the two children of the respondent, Arshaloos and Hagop, and that he remembered them very well at Sakrat, Armenia. He testified that two weeks after Easter in 1915 there was a Turkish massacre in Armenia and that he and Mrs. Der Manelian and the children in question were together in Harpout, and that he last saw them about June or July, 1915.

Azalig Simonian testified that he knew the respondent and his wife in the old country and they were married in Sakrat, Armenia; that they had two children, Arshaloos, who was born in 1910, and Hagop, who was born in 1911. He testified that Hagop was born about four months after the respondent left for the United States.

In cross-examination he testified that he was present at the wedding of the respondent and his wife, and he reiterated his testimony in regard to the births of Arshaloos in 1910 and Hagop in 1911. He stated that his wife is the respondent's sister and that he knew the respondent and his wife in the old country.

Harry Mahdesian testified that he remembered the respondent and his wife in the old country; that the respondent had two children whom he saw every day and that Arshaloos was the girl's name but he did not remember the boy's name. The witness lived six or seven houses away from the respondent in Sakrat. He testified that he is not related to the respondent or his wife.

Simon Der Manelian testified that he is a cousin of the respondent and that he came to this country about November 20, 1911, and that he formerly lived in Sakrat, and knew the respondent there and that he lived two houses away from him. He

testified further that the respondent and his wife were married in 1908 and their first child, Arshaloos, was born in 1910 and that the second child, Hagop, was born two or three months before he came to this country.

Kachkatoun Der Manelian, wife of the respondent, testified through an interpreter that she was married to the respondent in Palu-Sakrat in 1908; that two children were born there of the marriage, Arshaloos on April 15, 1910, and Hagop on July 10, 1911; that her husband left the old country about March 10, 1911, and that Hagop was born about four months after he left; that she remained in Palu-Sakrat until 1915 when she was deported with the two children to Harpout. She testified that they remained in Harpout about three or four months and then they were deported again; that the children were taken away from her by the Turkish soldiers and police and that she never saw them again; that she came to this country in 1927 and has lived with her husband ever since, and that a son David was born here. She testified that she could not read nor write English. She remembered the immigration official interviewing her in November, 1933 and January, 1934. She said she did not remember telling him that the names of her children were Varthouhi and Krekor.

In cross-examination she testified that she could not understand the immigration official's questions and that at that time she was "green" and was "bashful".

She testified that she wrote to her husband after Hagop was born in 1911 and told him of Hagop's birth. She denied telling the immigration official that she adopted any children. She further testified that she did not write to her husband and tell him about the children being taken away from her by the Turks because she did not want him to know about it.

In the case of United States v. Rovin, D.C., 12 F.2d 942, 944, the court said: "The question here presented is whether the defendant, by the false and fraudulent statement of a material fact, as charged in the petition already quoted, induced this court to grant the certificate of citizenship sought to be set aside. This is a question of fact, and the burden, of course, is upon the plaintiff to prove, by a preponderance of the evidence, the fraud which it has thus alleged. It is, moreover, elementary that fraud is not to be lightly

inferred but must be established by clear and convincing evidence."

The court has given careful consideration to this case and is not satisfied that the Government has established its case by clear and convincing evidence or that it has proved by a preponderance of the evidence the fraud which it has alleged in its petition. The evidence does not justify the court in nullifying the substantial right enjoyed by the respondent under the sanction of a previous judgment of this court.

The Government's petition to set aside and cancel the said certificate of citizenship of Hohanes Der Manelian is denied.